**FIRST NATIONAL BANK OF TELLURIDE, Petitioner,**

v.

**Terrence J. FLEISHER, Respondent.**

No. 98SC634.

Supreme Court of Colorado, En Banc.

May 30, 2000.

Lynch & Lynch LLC, Michael J. Lynch, Telluride, Colorado, Attorneys for Petitioner.

Zarlengo & Kimmell, LLC, Thomas J. Kimmell, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

This case concerns the effect of failure to provide a defaulting party notice as required under C.R.C.P. 55(b) of proceedings underlying a judgment lien against him. We must determine whether failure to provide such notice constitutes a jurisdictional defect that renders a default judgment void. We also consider whether, and under what conditions, failure to provide notice constitutes a violation of the defaulting party's due process right to be heard in the proceeding against him.[1]

We hold that lack of notice under C.R.C.P. 55(b) of a default judgment supporting a judgment lien is not a jurisdictional defect that renders the judgment and lien void. We therefore agree with the court of appeals' conclusion as to this issue. However, such lack of notice is a serious procedural error that can, in some instances, violate the due process rights of the defaulting party and, therefore, require vacating the default judgment. The facts of this case persuade us that the trial court correctly vacated a default judgment obtained without proper notice. We conclude, consequently, that the court of appeals incorrectly interpreted the trial court's 1993 order as "opening" rather than "vacating" the default judgment against Tharp. We therefore reverse the judgment of the court of appeals.

## I.

While we focus in this case on the effect of lack of notice of a default proceeding, the central concern of the parties to the dispute before us lies elsewhere. Petitioner First National Bank of Telluride (Telluride) seeks reversal of the court of appeals' decision that Respondent Terrence J. Fleisher's (Fleisher) judgment lien on the property of a third party, Barry T. Tharp (Tharp), is superior to

---

1. We granted certiorari to address these questions:
 1. Whether the court of appeals erred in concluding that, under *Weaver Construction Co. v. District Court,* 190 Colo. 227, 545 P.2d 1042 (1976), lack of notice in an action underlying a judgment lien did not constitute a jurisdictional defect and therefore did not render the underlying judgment void.

2. Whether the court of appeals erred in holding that a trial court's 1993 order "vacating" a judgment was actually an order "opening" a judgment.
3. Whether the court of appeals erred in failing to conclude that lack of notice in the underlying action was violation of due process that rendered the underlying judgment void.

Telluride's deed of trust on the same property. Determining whether Fleisher's lien is superior to Telluride's deed of trust turns on the issue of whether Tharp was provided adequate notice of Fleisher's action against him. Therefore, understanding the issues presented in this case requires a detailed discussion of the dispute between Fleisher and Tharp. (Tharp is not a party to the case before us.)

In 1991 Fleisher brought an action for breach of a promissory note against Tharp. Tharp initially answered Fleisher's complaint, denying liability. In January 1992, Fleisher moved for summary judgment; however, Tharp had in the interim filed for bankruptcy and the bankruptcy court stayed Fleisher's action against Tharp pending the outcome of the bankruptcy proceeding. The trial court at this point issued a minute order, stating that it would assume that the bankruptcy proceeding would permanently foreclose any further action by Fleisher against Tharp and that it would dismiss Fleisher's action without prejudice by August 19, 1992, unless Fleisher indicated otherwise. The trial court also stated in the order that the dismissal would occur on this date without a further order being necessary.

On August 17, 1992, the bankruptcy court dismissed Tharp's proceeding. However, Fleisher failed to inform the trial court of the dismissal until October 1992, when he did so in the course of an ex parte communication with the trial court. The trial court then issued a minute order requiring Tharp to answer Fleisher's original motion for summary judgment by November 4, 1992. Because the order was mailed to the wrong address, however, Tharp received no notice of the trial court's order to respond and did not reply to Fleisher's motion. On November 6, 1992, the trial court issued a default judgment against Tharp. This judgment was entered on November 13, 1992 and Fleisher filed a judgment lien against the property at issue in this case on November 16, 1992.

On January 14, 1993, Tharp moved under C.R.C.P. 60 to vacate the November 1992 default judgment on the grounds that lack of notice of the trial court's order to respond to Fleisher's motion for summary judgment vio-

lated C.R.C.P. 55(b). On January 25, 1993, the trial court granted Tharp's request to vacate the judgment "pursuant to Rules 60(a) and/or (b)." In March 1995, the dispute between Fleisher and Tharp went to trial and the court eventually entered judgment on the merits in Fleisher's favor. Fleisher entered a second judgment lien on March 17, 1995.

In April 1993, after the default judgment had been vacated but before the dispute with Fleisher went to trial, Tharp obtained a loan from Telluride. Tharp used the loan to refinance the property at issue here and to pay off several liens that were senior to Fleisher's judgment lien that was subject to the trial court's January 1993 order. Prior to Telluride's approval of the loan, an officer of its title company inquired as to the status of Fleisher's action against Tharp. The officer discovered that Fleisher had secured a judgment lien against Tharp's property but that the judgment was vacated in January 1993. Telluride subsequently executed and recorded a deed of trust on the property. In 1996 Telluride began foreclosure proceedings on its deed of trust. Fleisher then brought an action for declaratory judgment that his November 1992 judgment lien was superior to Telluride's April 1993 deed of trust.

The trial court in Fleisher's action for declaratory judgment found that, because Fleisher's November 1992 judgment lien was obtained without notice to Tharp, the judgment supporting the lien properly was vacated. Consequently, the trial court concluded that the November 1992 judgment lien was without effect and that Telluride was entitled to summary judgment because its April 1993 deed of trust took priority. The court of appeals reversed, concluding that the November 1992 judgment lien had been set aside on grounds other than those challenging the jurisdiction of the trial court. Therefore, the judgment was "irregular" rather than void. Fleisher's November 1992 judgment had been "opened" rather than "vacated" and, because Fleisher ultimately prevailed in March 1995 on the merits of his claim, the judgment lien was superior to Telluride's deed of trust.

## II.

We first consider whether the court of appeals correctly held that, under *Weaver Construction Co. v. District Court,* 190 Colo. 227, 545 P.2d 1042 (1976), lack of notice as required by C.R.C.P. 55(b)[2] in an action underlying a judgment lien does not constitute a jurisdictional defect and therefore does not render the underlying judgment void. We agree with the court of appeals' conclusion.

We begin with a review of *Weaver* and related decisions. The petitioner, Weaver Construction Co., sought to prevent the district court from setting aside a default judgment against the defendants in the underlying action and from destroying the priority of Weaver's judgment lien. *See Weaver,* 190 Colo. at 229, 545 P.2d at 1043. The district court set aside the default judgment and resulting judgment lien because defendant Robert Grinnell had not received proper service and because defendant Joy Grinnell demonstrated excusable neglect and stated a meritorious defense. *See id.* at 229–30, 545 P.2d at 1044. We held that the district court's decision to set aside the default judgment on these grounds was within the scope of its discretion. *See id.* at 231, 545 P.2d at 1044–45.

We then turned to the issue of whether the lower court's decision to set aside the default judgment could affect Weaver's judgment lien. *See id.* at 231, 545 P.2d at 1045. This issue required us to identify the difference between *opening* and *vacating* a default judgment. *See id.* We stated that "when a judgment is *opened* the defendant is allowed to answer on the merits of the claim, but the original judgment and judgment lien remain in effect as security pending the resolution of the trial on the merits." *Id.* at 232, 545 P.2d at 1045 (emphasis in original). If the plaintiff succeeds on the merits after the judgment is opened, the judgment lien retains its original force as if the judgment were never opened. *See id.* If the defendant prevails, then the judgment and judgment lien are

vacated—"dissolved as though they never existed." *Id.*

However, if a default judgment is set aside on jurisdictional grounds, it must be vacated. *See id.* Because in *Weaver* a defendant in the underlying action alleged a lack of service of process, we observed that "where a judgment is procured without service of process on the defendant, there is a want of personal jurisdiction, and the judgment is considered void." *Id.* Elementary principles of due process require, under such circumstances, vacation of a void judgment during a trial on the merits. *See id.*

It follows that whether a default judgment is opened or vacated turns on the basis for setting the judgment aside. "Generally, where a judgment is set aside on grounds other than those challenging the jurisdiction of the court, the judgment is *opened* .... Where a judgment is set aside on jurisdictional grounds, it is *vacated.*" *Id.* at 232, 545 P.2d 1042 (emphasis in original). We determined that as to defendant Robert Grinnell the default judgment was vacated because, due to lack of proper service of process, the trial court did not have personal jurisdiction over him. *See id.* at 233, 545 P.2d at 1046. Therefore, the judgment lien was void regarding Robert Grinnell. However, we held that the default judgment was only opened concerning defendant Joy Grinnell. The trial court found that she was subject to its jurisdiction, although she was entitled to answer on the merits due to excusable neglect and statement of a meritorious defense. Even though the default judgment was set aside, therefore, the judgment lien remained in effect against Joy Grinnell during proceedings on the merits. *See id.*

It is apparent that *Weaver* alone does not provide a complete answer to the question before us. While *Weaver* establishes that a default judgment must be vacated if there are jurisdictional grounds for setting it aside, it does not address whether lack of notice under C.R.C.P. 55(b) constitutes a jurisdictional defect. This silence is due to the

**2.** C.R.C.P. 55(b) states that "[i]f the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application."

factual circumstances of the case. Neither defendant claimed that he or she failed to receive notice as required under C.R.C.P. 55(b). Moreover, our other related decisions do not establish that failure to comply with C.R.C.P. 55(b) deprives the trial court of jurisdiction over a defaulting party. *See, e.g., Davidson Chevrolet, Inc. v. City & County of Denver*, 138 Colo. 171, 175, 330 P.2d 1116, 1118 (1958) (stating that a jurisdictional defect renders a judgment void, does not address whether lack of notice under C.R.C.P. 55(b) is such a jurisdictional defect). Instead, this court has held that failure to provide notice under C.R.C.P. 55(b) can be a prejudicial error that renders a default judgment without effect.

In *Emerick v. Emerick*, 110 Colo. 52, 54, 129 P.2d 908, 909 (1942), we held that a default judgment annulling a marriage was "prejudicial, reversible error" because the notice requirement of C.R.C.P. 55 was not observed. In *Holman v. Holman*, 114 Colo. 437, 440, 165 P.2d 1015, 1016 (1946), we relied on *Emerick* to nullify a default decree in a divorce action on the grounds that the party against whom the divorce was granted did not receive notice as mandated by C.R.C.P. 55(b). In so doing, we affirmed our view that lack of notice can constitute "reversible error." *Id.* at 439, 165 P.2d at 1016. In *Salter v. Board Of County Com'rs*, 126 Colo. 39, 47, 246 P.2d 890, 892 (1952), we held that a default judgment in an action involving a real estate transaction was "wholly void" because C.R.C.P. 55(b), in addition to other rules of procedure, was not followed. Finally, in *R.F. v. D.G.W.*, 192 Colo. 528, 531, 560 P.2d 837, 839 (1977), we stated that failure to provide notice in a paternity action required vacation of the default judgment. While we did not explicitly state the grounds for our holdings in *Salter* and *R.F.*, neither decision supports the proposition that notice prior to a default judgment is a jurisdictional requirement. *See also Westbrook v. Burris*, 757 P.2d 1142, 1143 (Colo.App.1988) (stating that failure to comply with C.R.C.P. 55(b) "renders the default judgment void"); *Schaffer v. Martin*, 623 P.2d 77, 78 (Colo.App.1980) (holding that violation of the notice requirement "mandates vacation of the entry of default as well as the default judgment").

Our discussion in *Civil Service Commission v. Doyle*, 162 Colo. 1, 8, 424 P.2d 368, 372 (1967), might suggest that notice is necessary for a court to have jurisdiction over the party against whom a default judgment is sought. We stated that failure to comply with C.R.C.P. 55 is "cogent when considering whether the court had authority to enter the default judgment and also whether it exceeded its jurisdiction in doing so." *Id.* However, a careful reading of our dicta in *Doyle* establishes that the case is consistent with our other decisions. We said only that notice might be relevant to a determination of whether the trial court had jurisdiction over the defendant, and thus, whether the default judgment was proper. We did not conclude that notice is a jurisdictional requirement; neither did we suggest that a jurisdictional concern motivated our holding in that case. Moreover, the cases we cited in support of our holding do not rest on jurisdictional grounds for requiring vacating of an improperly obtained default judgment. *See id.* (citing *Salter*, 126 Colo. at 47, 246 P.2d at 892; *Holman*, 114 Colo. at 440, 165 P.2d at 1016; *Emerick*, 110 Colo. at 54, 129 P.2d at 909).

In sum, we have never taken the position that lack of notice under C.R.C.P. 55(b) is a jurisdictional defect that necessarily requires vacating a default judgment. We decline to adopt that position, although we recognize that a few courts have held that notice requirements similar to those set forth in C.R.C.P. 55(b) are jurisdictional in nature. *See, e.g., Tucker v. Johnson*, 275 Ark. 61, 628 S.W.2d 281, 283 (1982); *Irvine Nat'l Bank v. Han*, 130 Cal.App.3d 693, 181 Cal.Rptr. 864, 866 (1982); *Caldwell Mfg. Co. v. Lebeau*, 591 S.W.2d 1, 6 (Mo.App.1979); *American Express Co. v. Maxcy*, 121 Misc.2d 528, 468 N.Y.S.2d 328, 329 (N.Y.Civ.Ct.1983); *Pollins v. McGovern*, 110 R.I. 186, 291 A.2d 418, 420 (1972).

We conclude that the weight of case law and scholarly commentary, even if divided between alternative positions, does not support the proposition that notice of a default proceeding is a jurisdictional requirement. *See* Annotation, *Effect, Under Rule 55(b)(2) of the Federal Rules of Civil Procedure and*

*Similar State Statutes and Rules, of Failure, Prior to Taking Default Judgment Against a Party Who Has Appeared, to Serve 3–Day Written Notice of Application for Judgment,* 51 A.L.R.2d 837 (1957 and 1999 Later Case Service); 10 James Wm. Moore et al., *Moore's Federal Practice* ¶ 55.21[2][d] (3d ed. 1998) ("Where a nondefaulting party has moved for entry of a default judgment, failure to give notice as required by Rule 55(b)(2) is a serious procedural error, but does not necessarily provide grounds for vacatur of the default judgment."); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure Civil* § 2687 (3d ed. 1998) ("A failure to give the three-day required notice generally is considered a serious procedural error that justifies the reversal or the setting aside of a default judgment. The judgment, however, usually is not considered void or subject to collateral attack because of this error."). Moreover, as we explain *infra,* the purposes behind C.R.C.P. 55(b)'s notice provision are achieved even if notice is not a jurisdictional requirement.

Accordingly, we agree with the court of appeals, and hold that lack of notice under C.R.C.P. 55(b) does not create a jurisdiction defect that automatically renders a default judgment void. We note that some earlier decisions of the court of appeals are inconsistent with this holding. *See, e.g., Southerlin v. Automotive Elecs. Corp.,* 773 P.2d 599, 601 (Colo.App.1988) (holding that notice under C.R.C.P. 55(b) is a jurisdictional requirement); *Best v. Jones,* 644 P.2d 89, 90 (Colo. App.1982) (stating that lack of notice under C.R.C.P. 55(b) "is a sufficient ground for reversing the judgment" because such notice goes to the jurisdiction of the trial court). To the extent that these cases stand for the proposition that notice under C.R.C.P. 55(b) is a jurisdictional requirement, they are hereby disapproved.

### III.

■ Nevertheless, failure to provide notice under C.R.C.P. 55(b) is a serious procedural error that may, in appropriate circumstances,

constitute a due process violation that requires vacating a default judgment. We hold that such circumstances exist in this case and that, consequently, the trial court properly vacated Fleisher's judgment and lien under C.R.C.P. 60.[3]

### A.

Many jurisdictions have voided default judgments obtained without proper notice on the grounds that such lack of notice constitutes a due process violation. *See, e.g., Peralta v. Heights Med. Ctr., Inc.,* 485 U.S. 80, 84, 108 S.Ct. 896, 99 L.Ed.2d 75 (1988) ("Failure to give notice violates the most rudimentary demands of due process of law.") (internal quotation marks and citations omitted); *Simer v. Rios,* 661 F.2d 655, 667 (7th Cir. 1981) ("Notice and an opportunity to be heard are the touchstones of procedural due process."); *V.T.A., Inc. v. Airco, Inc.,* 597 F.2d 220, 224 (10th Cir.1979) (stating that a default judgment is void if the court "has acted in a manner inconsistent with due process"); *Bass v. Hoagland,* 172 F.2d 205, 209 (5th Cir.1949) (holding that a default judgment rendered without notice violates due process and thus is void); *Sonus Corp. v. Matsushita Elec. Indus. Co., Ltd.,* 61 F.R.D. 644, 649 (D.Mass.1974) (holding that lack of notice "raises a question of due process"); *Ken–Mar Airpark, Inc. v. Toth Aircraft & Accessories Co.,* 12 F.R.D. 399, 400 (W.D.Mo. 1952) (holding that a failure to provide notice is "a failure of due process" rendering the default judgment a "nullity"); *see also* 51 A.L.R.2d at 839 ("Courts holding that default judgments entered without compliance with notice required by [Fed.R.Civ.P.] 55(b)(2) and its state counterparts are void have often based such holdings on the proposition that notice required by the Rule is necessary to afford due process" to the defaulting party.)

■ The rationale for finding a due process violation in a failure to provide adequate notice is rooted in the purpose behind the notice requirement of C.R.C.P. 55(b). As the Supreme Court observed in *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1,

---

**3.** The trial court did not specify the subsection of C.R.C.P. 60 that warranted granting Tharp's mo- tion. As we explain *infra,* the proper basis for granting Tharp's motion is C.R.C.P. 60(b)(3).

14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), "[t]he purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' " *See also Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (stating that due process is fundamentally the right to be heard and that the right has little worth unless one is informed of the pending matter). This purpose is fully implicated in a default proceeding. As we noted in *Doyle*, 162 Colo. at 8, 424 P.2d at 372, "default judgments – particularly in those actions where the defendant has answered and the case is at issue – are serious and drastic." The notice provision of C.R.C.P. 55(b) functions, therefore, to "insure fairness ... to a party who has expressed an interest in defending a lawsuit brought against him." *R.F*, 192 Colo. at 530, 560 P.2d at 838. Not surprisingly, we have required "fastidious" compliance with C.R.C.P. 55(b) before allowing a default judgment to stand. *See Doyle*, 162 Colo. at 8, 424 P.2d at 372.

■ In our view, C.R.C.P. 60(b)(3) [4] is the proper basis in our rules of civil procedure for vacating a default judgment if the defaulting party's due process rights were violated by a failure to receive notice as called for under C.R.C.P. 55(b).[5] In so concluding, we adopt the position of most federal jurisdictions, which consistently have held that Fed. R. Civ. Pro. 60(b)(4) – upon which C.R.C.P. 60(b)(3) is based – renders a default judgment void if the defaulting party's due process rights were violated because of a lack of notice. *See, e.g., Watts v. Pinckney*, 752 F.2d 406, 409 (9th Cir.1985); *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 735 (5th Cir.1984); *Owens–Corning Fiberglas Corp. v. Center Wholesale, Inc.*, 759 F.2d 1440, 1448–49 (9th Cir.1985); *Simer*, 661 F.2d at 663. *See also* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,

*supra*, § 2695, at 134–35 (stating that courts have interpreted Fed. R. Civ. Pro. 60(b)(4) to require vacating a default judgment when notice is not provided); 12 Moore's, *supra*, ¶ 60.44, at 148 ("It has repeatedly been stated that a judgment is void for purposes of Rule 60(b)(4) ... if the judgment was entered in violation of due process.") (internal quotation marks and footnote omitted; ellipsis in original).

■ We do not in this case adopt the blanket rule that failure to provide notice in compliance with C.R.C.P. 55(b) necessarily constitutes a due process violation that renders a default judgment void. We believe that the better course is for trial courts to consider the circumstances surrounding the notice given before deciding whether relief is warranted under C.R.C.P. 60(b)(3). *See Center Wholesale, Inc.*, 759 F.2d at 1448 (holding that "adequacy of notice depends on the factual context in which it is given"); *Bass*, 172 F.2d at 209–10; *Traveltown, Inc. v. Gerhardt Inv. Group*, 577 F.Supp. 155, 157 (N.D.N.Y. 1983) (concluding that "surrounding circumstances warrant the vacating of the default judgment"). Such an examination is necessary to "strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light" of the case. *Williams*, 728 F.2d at 733 (internal quotation marks and citations omitted).

■ Ordinarily, the decision whether to grant relief under C.R.C.P. 60(b) is entrusted to the sound discretion of the trial court. *See Front Range Partners v. Hyland Hills Metro.*, 706 P.2d 1279, 1281 (Colo.1985); *Ehrlinger v. Parker*, 137 Colo. 514, 517, 327 P.2d 267, 269 (1958) (stating that the decision to grant relief under C.R.C.P. 55(c) and 60(b) is subject to the discretion of the trial court and will not be disturbed absent an abuse of that discretion). However, "a motion under

**4.** According to C.R.C.P. 60(b)(3) "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding ... [if] the judgment is void."

**5.** This is not, however, the only basis on which a default judgment may be vacated under C.R.C.P.

60(b)(3). *See* Wright, *supra*, § 2862, at 326–29 (1995) ("A judgment is ... void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.") and cases cited therein. (Footnotes omitted).

[C.R.C.P. 60(b)(3)] differs markedly from motions under the other clauses of [C.R.C.P. 60(b)]." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, § 2862, at 322–24. If the surrounding circumstances indicate that the defaulting party's due process right was unfairly compromised by lack of notice of the default proceeding, then relief under C.R.C.P. 60(b)(3) is mandatory. *See Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir.1998) (holding that under Fed. R. Civ. Pro. 60(b)(4) it is a per se abuse of discretion for a lower court to uphold a void judgment); *V.T.A., Inc.*, 597 F.2d at 224 & n. 8 ("If voidness is found, relief is not a discretionary matter; it is mandatory."); *Smalls v. Batista*, 22 F.Supp.2d 230, 231 (S.D.N.Y.1998) ("[U]nlike other motions made pursuant to the other subsections of Rule 60(b), the court lacks discretion with respect to a motion made under Rule 60(b)(4). If void, the court must vacate the judgment."); *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 907 F.Supp. 663, 668 (S.D.N.Y.1995) (same). Accordingly, our review of motions for relief under C.R.C.P. 60(b)(3) is de novo. *See Carter*, 136 F.3d at 1005.

■ Relief under C.R.C.P. 60(b)(3) is mandatory because a void judgment "is one which, from its inception, was a complete nullity and without legal effect." *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.1972); *see also Weaver Constr.*, 190 Colo. at 232, 545 P.2d at 1045 ("It is an elementary principle of due process that where [a default judgment is obtained without service of process] ... the underlying judgment *must* be vacated in the first instance, as a void judgment cannot be allowed to remain in effect pending the outcome of a trial on the merits.") (emphasis added). Consequently, there is no judgment the propriety of which a court can review.

■■ Whether the judgment is void for failure to provide notice in compliance with C.R.C.P. 55(b) depends on whether the factual circumstances surrounding the default proceeding indicate that the defaulting party

was nonetheless aware that a default judgment was sought against it and that the defaulting party had sufficient opportunity to be heard. C.R.C.P. 55(b) sets forth the due process expectations of a party against whom a default judgment is sought. If the notice provisions of C.R.C.P. 55(b) are not adhered to, then the presumption arises that the defaulting party has suffered a due process violation that renders the judgment against it void. However, before a judgment is set aside as void under C.R.C.P. 60(b)(3), reviewing courts should carefully examine whether, though the literal requirements of C.R.C.P. 55(b) were not adhered to, the defaulting party was nonetheless aware of the default proceedings and was afforded a sufficient opportunity to be heard in defense. If there is substantial evidence that the defaulting party had adequate notice of the default proceedings despite failure of the moving party to comply with Rule 55(b), then the purposes of Rule 55(b) are achieved and there is no basis for voiding the judgment.

We now apply these principles to the case at hand.

### IV.

We hold that the failure to provide notice to Tharp of Fleisher's November 1992 motion for summary judgment was a violation of Tharp's due process rights that, in light of the factual circumstances of this case, rendered the default judgment subsequently obtained void.[6] Consequently, the trial court properly vacated the default judgment in January 1993.

■ As a preliminary matter, we will briefly explain why the notice requirement of C.R.C.P. 55(b) was triggered in this case. Notice of a default proceeding is required only if the party against whom the default judgment is sought has appeared in the underlying action. *See* C.R.C.P. 55(b). A party has appeared for the purposes of this Rule if it has submitted to the jurisdiction of the court. *See In the Interest of J.M.W.*, 36

---

6. Because of our holding, there is no need to consider Telluride's related but distinct argument that the trial court lost jurisdiction over Tharp when Fleisher did not renew his action by the August 19, 1992 deadline that the trial court imposed in light of Tharp's bankruptcy proceeding.

Colo.App. 398, 542 P.2d 392, 393 (1975) ("The essence of an appearance as it is used in C.R.C.P. 55(b)[ ] is a cognitive submission of oneself to the jurisdiction of the court."). We have "taken a liberal approach to determining what constitutes an 'appearance' under C.R.C.P. 55(b)[ ]." *Biella v. State Dept. of Highways,* 652 P.2d 1100, 1102 (Colo.App. 1982).

 Under these principles, when Tharp answered Fleisher's complaint for breach of promissory note, denying liability, Tharp appeared in the action. His answer indicated a willingness to submit to the jurisdiction of the court and to defend against Fleisher's allegations. Moreover, the stay of Fleisher's action while Tharp's bankruptcy proceeding was pending did not dissolve Tharp's appearance for the purpose of defending against Fleisher's claim. Therefore, in November 1992, when the trial court ordered Tharp to answer Fleisher's motion for summary judgment, Tharp had appeared in the action, thus triggering the notice requirement of C.R.C.P. 55(b).

 The basis for our holding that Tharp's due process right to notice was violated lies in the trial court's February 1992 order staying the state case because of the federal bankruptcy proceedings Tharp commenced after Fleisher filed his complaint, Tharp answered, and Fleisher moved for summary judgment. The court stated in this order that it assumed Tharp's bankruptcy proceeding would "permanently foreclose[ ]" it from resolving the issues presented in this case. Fleisher's case would be dismissed without prejudice on August 19, 1992 unless the court "heard to the contrary" from Fleisher. Moreover, the trial court explicitly stated that, absent new information from Fleisher, no further order would be necessary to trigger dismissal of Fleisher's action. It was therefore incumbent on Fleisher to notify the court and Tharp of any intention to renew his action against Tharp. Unless Fleisher did so, Tharp was entitled to assume that the action was dismissed without prejudice.

However, once the federal bankruptcy court dismissed Tharp's case on August 17, 1992, Fleisher did nothing to revive his action

against Tharp until October 6, 1992, approximately six weeks after the deadline drawn by the trial court. At that point, Fleisher communicated ex parte to the court an intention to renew his suit. This communication provided no notice to Tharp that Fleisher desired to litigate the case within the six-month time period allowed in the trial court's order, just as the trial court's order to respond to Fleisher's motion for summary judgment provided Tharp of no notice that the action had been renewed. Therefore, Fleisher did not comply with the notice provision of C.R.C.P. 55(b). *See Doyle,* 162 Colo. at 8, 424 P.2d at 372. Moreover, nothing in the record suggests that Tharp nonetheless had actual or even constructive notice of Fleisher's renewal of his claim.

On these facts, while Tharp had answered Fleisher's petition, denying liability, Tharp was entirely precluded from exercising his right to know of Fleisher's subsequent motion for summary judgment and to prepare a defense to it if he so chose. *See Craft,* 436 U.S. at 14, 98 S.Ct. 1554. Therefore, the purpose of notice as required under the Due Process Clause was not served in this instance. *See id.* The failure to notify Tharp of the motion for summary judgment effectively nullified his due process right to be heard on the matter. *See Mullane,* 339 U.S. at 314, 70 S.Ct. 652. Because notice was not provided Tharp of the motion for summary judgment, he was not afforded a sufficient opportunity to defend against Fleisher's claim. *See R.F.,* 192 Colo. at 530, 560 P.2d at 838. Additionally, we note that the trial court captioned its order granting relief from default judgment as "Order Granting Relief Pursuant to Rule 60(a) AND/OR (b)," simply repeating the language from the caption of the motion, while choosing the phrase "grants the defendant's request to vacate . . ." in the body of the order. Thus, the trial court expressly found that the proper relief was to vacate the judgment.

We conclude that the default judgment entered against Tharp in November 1992 was void for due process reasons. *See Watts,* 752 F.2d at 409; *Williams,* 728 F.2d at 735; *Center Wholesale, Inc.,* 759 F.2d at 1448–49; *Simer,* 661 F.2d at 663. Therefore, the trial

court properly vacated the default judgment and the accompanying lien under C.R.C.P. 60(b).

Consequently, we reverse the court of appeals' holding that the trial court merely "opened" the default judgment pending a resolution of the underlying merits at trial. The court of appeals erroneously inferred that, because lack of notice did not create a jurisdictional defect, the default judgment was irregular rather than void. The court of appeals correctly stated that an irregular judgment is opened pending a resolution of the underlying merits at trial, and thus remains in effect during the trial and if the plaintiff succeeds on the merits. *See Weaver Constr.*, 190 Colo. at 232, 545 P.2d at 1045; *Davidson Chevrolet, Inc.*, 138 Colo. at 175, 330 P.2d at 1118. However, the court of appeals failed to consider the due process concerns implicated by the lack of notice in this case. A default judgment rendered in violation of the defaulting party's due process rights is a legal nullity. *See Salter*, 126 Colo. at 47, 246 P.2d at 892; *Lubben*, 453 F.2d at 649. Therefore, the proper disposition of the judgment is to vacate it. *See Weaver Constr.*, 190 Colo. at 232, 545 P.2d at 1045. Such a judgment cannot remain in effect during a trial on the underlying merits because, from the beginning, it had no legal force whatsoever. It *never* was in effect. Therefore, we reverse the judgment of the court of appeals that the default judgment was opened by the trial court's January 1993 order and affirm the judgment of the trial court to vacate the judgment and accompanying lien.

### V.

It remains for us to apply the results of the foregoing analysis to the dispute between Fleisher and Telluride as to which of their claims on Tharp's property has priority. Fleisher's lien is superior to Telluride's deed of trust only if the first lien remained in effect in April 1993, when Telluride entered its deed. However, as we have explained, this is not the case. Fleisher's lien was vacated – and so rendered without legal ef-

fect – in January 1993 when the trial court granted Tharp's motion for relief under C.R.C.P. 60. Conversely, Telluride's deed of trust is superior to Fleisher's second judgment lien, which was entered in March 1995 following a successful trial on the merits against Tharp.

### VI.

The trial court properly granted summary judgment for Telluride and we reinstate its judgment. We reverse the court of appeals' judgment that Fleisher's lien was superior to Telluride's deed of trust.

Justice COATS does not participate.